IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| CHRISTOPHER GARRETT, #786065 | § | |
| v. | § | CIVIL ACTION NO. 6:17cv310 |
| KIMBERLY SULSER, ET AL. | § | |

<u>MEMORANDUM OPINION ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff Christopher Garrett (Garrett), an inmate confined within the Texas Department of Criminal Justice proceeding *pro se*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 alleging purported violations to his constitutional rights. The complaint was referred for findings of fact, conclusions of law, and recommendations for the disposition of the case.

The present memorandum opinion concerns only Defendant Linthicum's motion to dismiss, (Dkt. #19), and the Magistrate Judge's Report, (Dkt. #68), recommending that the motion be granted.

**I. Garrett's Underlying Allegations**

In his initial complaint, (Dkt. #1), and his amended complaint, (Dkt. #21), Garrett stated that in May 2015, while he was incarcerated at the Michael Unit, he received a job transfer in which new duties required him to climb up and down stairs, which resulted in debilitating pain in his knee and hip. On June 1, his leg "gave out" while walking, causing him to stumble and fall. Garrett states that the medical staff at the Michael Unit refused to issue him a walker or crutches and refused to treat or diagnose him for weeks.

Garrett then highlighted how he slipped in the shower area on June 29, 2015, causing him to black out, fall onto the wet concrete, and sustain a severe hip fracture. He noted that he was sent to the infirmary on an emergency basis. Garrett contended that before and after he arrived at

1

medical, a nurse repeatedly and intentionally twisted his foot and leg, causing unbearable pain and illustrating her—and others within the medical department—deliberate indifference to his serious medical needs. After weeks of failing to treat and provide pain medication, Garrett was taken to a hospital in Galveston and underwent hip surgery on July 10, 2015.

As for Defendant Linthicum, the Director of Health Services for TDCJ, Garrett insisted that she "acts with deliberate indifference to the Plaintiff's serious medical needs by refusing to take steps, as is [her] duty, to ensure the proper training of the TDCJ nursing staff and to ensure that the nursing staff does not act with deliberate indifference." He also stated that it is routine practice for medical grievance investigators "to give obtuse responses to misdirect and obfuscate the grieved issue at both the Step I and Step II levels." Finally, Garrett maintained that Defendant Linthicum is complicit in falsifying medical records to "further accomplish the delay and/or denial of needed health care." Garrett requests declaratory and injunctive relief, as well as both punitive and compensatory damages.

## II. Defendant Linthicum's Motion to Dismiss and Garrett's Reply

In her motion to dismiss, (Dkt. #19), Linthicum argues that Garrett presented merely conclusory claims against her. Additionally, she maintained that she had no personal involvement with respect to any of Garrett's claims and that Garrett failed to overcome qualified immunity.

Garrett filed a response to Linthicum's motion to dismiss. He argued that she undoubtedly had personal involvement because she has ultimate authority over the Step II medical grievance procedures; given that role, her "refusal to properly investigate complaints in the Step II medical grievances creates policies, procedures and customs that assure the continuity of her subordinates act with deliberate indifference to the Plaintiff's serious medical needs." Moreover, Garrett

insisted that Linthicum had personal involvement through her failure to train the prison's nursing staff.

## III. The Magistrate Judge's Report and Recommendation

In recommending that Defendant Linthicum's motion be granted, the Magistrate Judge found that Garrett failed to demonstrate deliberate indifference, failed to illustrate Defendant Linthicum's personal involvement or supervisory liability, and failed to show any failure to train. Garrett has filed timely objections to the Report, (Dkt. #74).

## IV. Legal Standards

*A. Motions to Dismiss*

The Fifth Circuit has observed that motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and rarely granted." *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). Such motions are generally evaluated on the pleadings alone. *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986).

Nevertheless, Federal Rule of Civil Procedure 12(b)(6) permits dismissal if a plaintiff "fails to state a claim upon which relief may be granted." A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging System Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is **not**

akin to a probability standard; rather, the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Bell*, 550 U.S. at 556 (emphasis supplied).

Although all well-pleaded facts are taken as true, the district court need not accept true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 Fed.App'x 414, 2012 WL 5419531 (5th Cir. Nov. 7, 2012) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id*.

### B. *Deliberate Indifference*

As the Report highlights, deliberate indifference to an inmate's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under section 1983. *See Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id*. at 837.

The Fifth Circuit has discussed the high standard involved in demonstrating deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personal does not suffice to state a claim for deliberate

4

> indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*. Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In the medical care context, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does an inmate's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Moreover, "medical records of sick calls, examinations, diagnosis, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41F.3d 232, 235 (5th Cir. 1995).

### C. Personal Involvement and Supervisory Liability

A plaintiff in a civil rights case must demonstrate not only a constitutional violation, but also personal involvement on behalf of those alleged to have violated the plaintiff's constitutional rights. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."); *Thompson v. Crnkovich*, 2017 WL 5514519 *2 (N.D. Tex.—Albilene, Nov. 16, 2017) ("Without personal involvement or participation in an alleged constitutional violation, or implementation of a deficient policy, the individual should be dismissed as a defendant.").

The doctrine of respondeat superior does not apply to section 1983. *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Under 42 U.S.C. § 1983, supervisory officials are not liable for a subordinate's actions on any vicarious liability theory. In fact, the Supreme Court has held that the term "supervisory liability" is actually

5

a misnomer since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *See Iqbal*, 556 U.S. at 677. In *Iqbal*, the Supreme Court rejected an argument that government officials may be held liable because they merely had knowledge or acquiesced in their subordinate's misconduct. *Id*. As a result of *Iqbal*, other courts have questioned whether supervisory liability remains an option at all in section 1983 cases. *See, e.g.*, *Dodds v. Richardson*, 614 F.3d 1185, 1194-95 (10th Cir. 2010); *Parrish v.Ball*, 594 F.3d 993, 1001 n.1 (8th Cir. 2010).

Under current Fifth Circuit jurisprudence, a supervisor may only be held liable if one of the following exists: (1) her personal involvement in the constitutional deprivation, (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations, or (3) the supervisory official implements a policy that itself is a repudiation of civil rights and is the moving force of the constitutional violation. *See Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008); *see also Pena v. City of Rio Grande City*, 879 F.3d 613 (5th Cir. 2018) (explaining that a plaintiff in a section 1983 case establishes supervisor liability "if (1) [the supervisor] affirmatively participates in the acts that cause the constitutional deprivation, or (2) [the supervisor] implements unconstitutional policies that result in the constitutional injury.") (internal citation omitted).

Importantly, in order to demonstrate that a supervisor is liable for constitutional violations committed by subordinate employees, "plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Id*. (citing *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011)).

*D. Failure to Train*

In order to establish section 1983 liability for the failure to train, a plaintiff must establish that "(1) the supervisor failed to train the subordinate official; (2) a causal link exists between the

failure to train and the constitutional violations; and (3) the failure to train amounts to deliberate indifference to the plaintiff's constitutional rights." *See Flores v. Livingston*, 405 Fed.App'x 931, 932 (5th Cir. 2010) (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005)). The inadequacy of the training must be obvious and obviously would result in a constitutional violation. *Id*. Ordinarily, to establish deliberate indifference based on the lack of training or supervision, a plaintiff must demonstrate a pattern of similar violations. *Id*.

## V. Garrett's Objections and Discussion

A review of Garrett's objections show that he takes issue with the Magistrate Judge's determination that he failed to state a claim upon which relief can be granted. He points to specific portions of his complaint and attachments to claim that he has presented sufficient factual allegations to support his claims against Linthicum. Garrett also objects to the specific findings that he failed to show deliberate indifference, personal involvement, and supervisory liability.

### A. Deliberate Indifference

Garrett initially argued that Linthicum acted with deliberate indifference to his serious medical needs by (1) failing to train the nursing staff over whom she has authority; (2) enacting policies and procedures that allow her subordinates to act with deliberate indifference; (3) failing to investigate his medical grievances properly; and (4) remaining complicit in falsifying medical records.

The Magistrate Judge reviewed records furnished by Garrett and found that medical staff responded to his medical grievances and he was treated for his fractured hip. Accordingly, the Magistrate Judge found that Garrett failed to show that Linthicum failed to treat him, ignored his complaints, or engaged in conduct that evinced a clear disregard for his medical needs.

7

On objection, Garrett contends that the Magistrate Judge erroneously determined that he failed to show Linthicum's deliberate indifference. Specifically, he argues that the Magistrate Judge overlooked allegations that he "did not get medical treatment for his broken hip until his family intervened on his behalf," how he was bedridden for a week and relied on other inmates for medical needs, and "how the medical staff never responded positively to his grievances." He notes that the Magistrate Judge "must have overlooked" how Defendant Linthicum has authority over Step II prison grievances and "sets policy and custom authority over the medical staff's conduct."

The Magistrate Judge properly found that Garrett failed to show deliberate indifference. Medical records of sick calls, medical examinations, diagnoses, and medication can rebut an inmate's allegations of deliberate indifference. *See Banuelos*, 41 F.3d at 235; *see also Huff v. Crites*, 473 Fed.App'x 398, 399 (5th Cir. 2012) ("Huff has made no showing of deliberate indifference. The medical records and Huff's recitation of the facts indicate that he was frequently provided mental health treatment for his depression."); *Rodriguez-Rodriguez v. Smith*, 207 Fed.App'x 479, 480 (5th Cir. 2006) ("Rodriguez's medical records show that he was examined repeatedly and received extensive treatment and objective tests for his back, shoulder, and flu-like symptoms. These records rebut his claims of deliberate indifference.").

Here, Garrett's own submitted records demonstrate that he was frequently examined and treated after his multiple injuries. In various portions of his own attachments, Garrett describes the treatment he received, including multiple examinations, X-rays, hip surgery, and prescriptions for several types of pain medication. (Dkt. #1, pg. id. # 3-40). Garrett's own attachments demonstrate that Linthicum was not deliberately indifferent to his serious medical need; he has not shown that she "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious

medical needs." *See Domino*, 239 F.3d at 756; *see also Gonzales v. Isbell*, 2009 WL 1941224 *5 (S.D.Tex.—Houston, Jul. 2, 2009) ("Where the prisoner's medical records document assessment and treatment of plaintiff's medical complaints, he has not been subjected to unconstitutional treatment.") (citing *Banuelos*, 41 F.3d at 235).

Garrett's claim regarding how the Magistrate Judge overlooked how he "did not get medical treatment for his broken hip until his family intervened on his behalf and "how the medical staff never responded positively to his grievances" fails as well. Garrett does not have a federally protected interest in having his prison grievances resolved to his satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005). Moreover, "a delay in medical care violates the Eighth Amendment only if it is based on deliberate indifference and results in substantial harm." *Callum v. Tex. Dep't of Criminal Justice*, 375 Fed.App'x 417, 419 (5th Cir. 2010). Having determined that Garrett failed to show that Linthicum was deliberately indifferent to his serious medical needs, he cannot show that any delay violated the Eighth Amendment. The Magistrate Judge properly found that Garrett's failed to state a claim upon which relief can be granted with respect to his claim of deliberate indifference against Linthicum. This claim should therefore be dismissed.

*B. Personal Involvement and Supervisory Liability*

Garrett maintained that Linthicum's personal involvement in the purported deprivations of his constitutional rights stems from her ultimate authority over prison Step II grievances. He contended that her refusal to "properly investigate" these Step II medical grievances creates policies and procedures of deliberate indifference to his serious medical needs." He further argued that her personal involvement also stemmed from her failure to train the nursing staff.

The Magistrate Judge found that Garrett's claims were conclusory and that he failed to show that her "policies" resulted in the deprivation of his rights. On objection, Garrett again insists

9

that Linthicum "has set policy and custom and created an atmosphere that tolerates and even encourages prison medical staff to act with deliberate indifference to serious medical needs."

However, the Magistrate Judge correctly recommended a dismissal of these claims. Garrett's claims remain conclusory: He fails to articulate what **specific** policy Linthicum created or enforced that resulted in a constitutional deprivation. He simply points to the denial of his grievances as evidence of a custom or policy of deliberate indifference. As noted above, however, prisoners have no constitutional right to the existence of a grievance procedure and no liberty interest in having grievances resolved to their satisfaction. *See Geiger*, 404 F.3d at 373-74; *see also Edmond v. Martin*, 100 F.3d 952, 1996 WL 625331 (5th Cir. Oct. 2, 1996) (prisoner's claim a defendant "failed to investigate and denied his grievance" raises no constitutional issue); *Thomas v. Lensing*, 31 F.App'x 153, 2001 WL 1747900 (5th Cir. Dec. 11, 2001) (same).

Moreover, the fact that Linthicum purportedly received and denied Garrett's Step II medical grievances does not demonstrate personal involvement in a constitutional violation. The denial of grievances does not demonstrate the existence of a policy or custom. Garrett cannot evade the holding in *Geiger* simply by casting his complaint regarding the denial of his medical grievances—or dissatisfaction with the outcome of his grievances—in the form of a claim of personal involvement by Linthicum through her failure to act on Garrett's grievances in a way that Garrett believed appropriate. *See Whitlock v. Stephens*, civil action no. 5:14cv94, 2016 WL 7155292 (E.D.Tex., December 8, 2016) (the fact that defendants received grievances and letters but did not take the corrective action the prisoner believed appropriate did not show a constitutional violation, much less personal involvement in such a violation) (*citing Cervantes v. Sanders*, civil action no. 2:98cv187, 1998 WL 401628 (N.D.Tex. Jul. 14, 1998)); *Welch v. Grounds*, civil action

no. 5:11cv200, 2013 U.S. Dist. LEXIS 46081 (E.D.Tex. Feb. 14, 2013), *Report adopted at* 2013 U.S. Dist. LEXIS 40866 (E.D.Tex. Mar. 25, 2013).

Garrett's contention that Linthicum was complicit in "falsifying" medical records also fails to state a claim upon which relief can be granted. A review of Garrett's attachments to his complaint shows that he believes that the prison nurse who first saw him after his major fall in late June 2015 falsified the nurse report of that visit by noting that he was ambulatory when arriving at the nurse's station. (Dkt. #1, pg. 29). He claims he was transported by a stretcher. Taking this assertion as true, Garrett has not connected any alleged "falsification" of records to Linthicum. While Garrett attached his grievances and signed affidavits from other prisoners indicating that he was transported via a stretcher/gurney, Garrett has not provided any sufficient factual enhancement that would support any indication of falsification. The federal pleading rules do not require "detailed factual allegations," but the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

*C. Failure to Train*

Garrett initially argued that Linthicum refuses to ensure the proper training or supervision of her subordinates, authority that has been regulated to her by the Texas Board of Nursing. He contended that this refusal to properly train directly caused him to suffer injury.

The Magistrate Judge found that Garrett failed to connect Linthicum's alleged "failure to train" to any constitutional violation. He also determined that while Garrett insisted that she repeatedly avoids training her subordinates properly, Garrett failed to allege specifics regarding the inadequacy of this training or any support indicating a pattern of similar violations. On objection, Garrett avers that "a causal link exists between the failure to train and the constitutional violation and that failure to train amounts to deliberate indifference." He points to portions of his

11

complaint—the denial of his medical grievances—that purportedly demonstrate a "pattern of similar violations."

However, as explained above, prisoners have no constitutional right to the existence of a grievance procedure and no liberty interest in having grievances resolved to their satisfaction. *See Geiger*, 404 F.3d at 373-74. The denial of his medical grievances do not demonstrate Linthicum's pattern of allegedly failing to train or deliberate indifference—especially because Garrett has failed to show Linthicum had personal involvement or acted with deliberate indifference in the first place. The Magistrate Judge correctly recommended that this claim be dismissed.

Finally, Garrett objects to the Magistrate Judge's recommendation that his complaints against Linthicum be dismissed with prejudice. Specifically, he notes that he is proceeding *pro se* and has limited legal knowledge. He also explains that he filed his amended complaint, (Dkt. #21), one day before receiving Linthicum's motion to dismiss.

While the pleadings of *pro se* litigants are read liberally, in this case, Garrett cannot show that Defendant Linthicum had personal involvement, supervisory liability, or engaged in deliberate indifference to his serious medical needs. Thus, the Magistrate Judge correctly recommended a dismissal with prejudice. Contrary to Garrett's contention, based on his own words and attachments, there is no causal link between Linthicum's actions and any constitutional violation. This objection is overruled.

## VI. Conclusion

Ultimately, Garrett has failed to state a claim upon which relief can be granted against Defendant Linthicum. His own attachments demonstrate that she did not act with deliberate indifference, did not have personal involvement, and is not liable under any theory of supervisor liability.

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Upon such *de novo* review, the Court has determined that the Report of the United States Magistrate Judge is correct and the Plaintiff's objections are without merit. Accordingly, it is

**ORDERED** that Plaintiff's objections, (Dkt. #74), are overruled and the Report of the Magistrate Judge is **ADOPTED**. Additionally, it is

**ORDERED** that Defendant Linthicum's motion to dismiss, (Dkt. #19), is **GRANTED**. Plaintiff's claims against her are hereby **DISMISSED** with prejudice. This order shall not prevent the Plaintiff from pursuing such other claims as he may have in this lawsuit.

So **ORDERED** and **SIGNED** this 7 day of **March, 2018.**

_____
Ron Clark, United States District Judge